IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MATTHEW J. MURRAY          :
                           :
        Plaintiff          :
                           :
    v.                     :    Civil Case No. 3:11-CV-2302
                           :
JELD-WEN INC., PRUDENTIAL   :
INSURANCE CO. OF AMERICA    :    (JUDGE RICHARD P. CONABOY)
                           :
        Defendants         :

---

## MEMORANDUM

We consider here a Motion for Summary Judgement (Doc. 30) filed by Defendants JELD-WEN, Inc. ("JW") and Prudential Insurance Company of America ("Prudential"), the only remaining Defendants in this case. [1] That motion has been fully briefed (Docs. 32, 35, and 37) by the parties and this matter is now ripe for disposition.

I.  **Background.**

The Amended Complaint (Doc. 8) filed by Plaintiff Matthew J. Murray ("Murray") seeks relief under the Employee Retirement Income Security Act of 1974 ("ERISA") to obtain disability benefits provided by a Master Benefit Plan (the "Plan") created by JW, Murray's employer, and underwritten by Prudential. Murray was employed by JW from April, 2007 until June, 2010 when, he alleges, he became disabled due to Bipolar Mood Disorder and related

---

[1] By Order dated September 19, 2012 (Doc. 29) Defendant Shasta Administrative Services' Motion for Summary Judgment was granted and Shasta was accordingly dismissed as a Defendant.

1

conditions." (Doc. 8 at ¶¶ 6 and 7). Plaintiff Murray's treating physician, Dr. Pamela Leib, a psychiatrist, released Murray to return to work on June 6, 2010. (Doc. 31, ¶ 7; Doc. 36, ¶ 7). On June 7, 2010, Murray claims his mental condition became once again disabling. (Doc. 31, ¶ 9; Doc. 36, ¶ 9). On November 1, 2010, Prudential, in its role as claims administrator of the Plan, determined that Murray was not disabled (Doc. 8 at ¶ 11) and his final appeal was denied by Prudential on November 2, 2011 (Doc. 8 at ¶ 15). Finally, Murray alleges that he has complied with all his obligations under the Plan and that Prudential and JW acted in an arbitrary and capricious manner in denying his claim for disability benefits. (Doc. 8 ¶'s 17 and 23). In the damages clause of his Amended Complaint Murray seeks "all benefits due and owing under the policy, plus interest" and various other forms of relief.[2] (Doc. 8 at ¶ 4).

## II. Summary Judgment Standard.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A disputed fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

[2] Because Murray's claim was for disability based on mental health reasons, his entitlement under the Plan could not exceed two years compensation over his lifetime. (Doc. 31-2 at D 627)

2

(1986). A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor, *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir.2005). Nonetheless, the party opposing summary judgment must support each essential element of the claim with concrete evidence in the record. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-23, (1986). This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex, supra*, at 322; Wisnieweski v. *Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir.1987). If the non-movant's evidence is merely speculative, conclusory, "or is not significantly probative, summary judgment may be granted." *Anderson, supra*, at 249-50 (internal citation omitted).

A plaintiff's mere belief is not enough to create a dispute of material fact sufficient to survive summary judgment. See *Lexington Ins. Co. V. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir.

2005)(holding that speculation is not sufficient to defeat a motion for summary judgment). Our circuit has stated: "...summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. V. Colkitt,* 455 F.3d 195, 201 (3d Cir.2006).

### III. JW's Motion for Summary Judgment.

Jw's Motion for Summary Judgment is predicated on its assertion that, because Prudential had unilateral authority to grant or deny Murray's application for benefits under the Plan, it is not a proper party defendant. (Doc. 30 at 1). This is the self-same argument that former Defendant Shasta Administrative Services had raised successfully in this Court.

The Plan provides that disability benefits are provided under a group insurance contract (the "Contract") underwritten by Prudential. (Doc. 31 at ¶ 1; Doc. 36 at ¶ 1). The Plan provides further that a participant is disabled "when Prudential determines that:

> The participant is unable to perform the material and substantial duties of his or her regular occupation due to sickness or injuries; and
> 
> The participant is under the regular care of a doctor; and
> 
> The participant has a 20% or greater loss in his or her

4

indexed monthly earnings due to that sickness or injury."
(Doc. 31 at 2; Doc. 36 at 2). Both the Plan and the Contract clearly characterize Prudential as the party with sole discretion to award or deny disability benefits. More specifically, the Plan states:

> The Prudential Insurance Company of America as claims administrator <u>has the sole discretion</u> to interpret the terms of the Group Contract to make factual findings, and to determine eligibility for benefits. (emphasis added).

(Doc. 31-2 at D 652).

Despite the clear language of the Plan reference above, Murray refuses to acknowledge that Prudential functioned as the claims administrator under the Plan with discretionary authority to interpret the Plan and make claim determinations. By way of denying that proposition, in his response to JW's Statement of Material Facts Murray observes: "Nothing in the documents cited preclude JW from exercising discretion over the determination (on whether to award benefits)." (Doc. 36 at ¶ 4). Murray is patently incorrect about this. The literal wording of the previously cited portions of the Plan bestows unilateral authority for making benefits determinations on Prudential.

In his Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. 35), Murray devotes but one paragraph to the notion that "JW/Shasta exercised great control over Prudential's

5

decisions." In support of this notion, Murray alludes to Exhibits 4 and 5, which inexplicably, do not exist as addenda to his brief. [3] The Court surmises that these are the same exhibits that the Court discounted in the process of granting Shasta's Motion for Summary Judgment. Having previously determined that these exhibits, comprised of various items of email correspondence, were not probative that any entity but Prudential made the decision to deny Murray's application for disability benefits, we cannot conclude that these phantom exhibits provide any evidence that JW exerted any influence over the benefits determination here.

For a claimant to survive a summary judgment motion, he must present a quantum of evidence sufficient for a jury to return a verdict in his favor. *Anderson, supra, at 249.* That evidence must be more than speculative or merely colorable, it must also be significantly probative, Id. At 249-50. Based on the state of the record in this case, we conclude that Murray has simply not adduced the necessary, "significantly probative" evidence to create a legitimate question regarding whether JW had some degree of control over the decision to deny Murray's application for disability benefits. Thus, because this Court agrees with the parties that the most analogous case law, *Evans v. Employee Benefit Plan, Camp Dresser and McKee*, Inc. 311 Fed. Appx. 556 (3d. Cir. 2009),

---

[3] The only Exhibit to Murray's brief is a decision of the Social Security Administration denoted as Exhibit "A".

provides that only the Plan itself, or an entity with discretion under the Plan to make a determination on benefits, can be a proper defendant in an ERISA action, this Court concludes that Summary Judgment must be granted in JW's favor.[4]

IV. **Prudential's Motion for Summary Judgment.**

Prudential's argument in support of its Motion for Summary Judgment is that the administrator of an ERISA plan like the one at issue here makes benefits determinations subject to an arbitrary and capricious standard of review. The parties do agree that, in the context of an ERISA claim, a court reviewing an eligibility determination by the plan administrator must employ an abuse of discretion standard and may reverse the plan administrator's decision only if it was without a reasonable basis or was, in other words, "arbitrary and capricious". *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948 (1989). (Doc. 32 at 15; Doc. 35 at 4). Murray argues, however, that: "[W]hen the same entity both funds and administers benefits (as is surely the case in the matter sub judice), it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." *Pinto v. Reliance Standard Life Insurance Company*, 214 F.3d 377, 387 (3d. Cir. 2000). (Doc. 35 at 4). This

---

[4] While we recognize that *Evans* is not a "Precedential" decision of the Third Circuit, it is factually analogous to the instant case and the parties do concur that it controls here. See JW's Memorandum of Law in Support of its Motion for Summary Judgment (Doc. 32 at 24) and Plaintiff's Brief in Opposition to JW's Motion for Summary Judgment (Doc. 35 at 10).

7

"sliding scale" standard of review permitted courts to "take notice of discrete factors suggesting that a conflict may have influenced the administrator's decision." Id. At 378.

Murray's argument fails to acknowledge that the "sliding scale" variety of the arbitrary and capricious standard of review for ERISA claims was effectively overruled by the Supreme Court's decision in *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343 (2008). The Third Circuit has expressly rejected the notion that the Pinto "sliding scale" analysis remains viable by finding that:

> ...we find that in light of Glenn our "sliding scale" approach is no longer valid. Instead, courts reviewing the decisions of ERISA plan administrators and civil enforcement actions brought pursuant to 29 U.S.C. § 1132 (a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary reached its discretion.

*Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d. Cir. 2009).

In light of *Schwing, supra*, this Court will consider Prudential's decision to deny benefits in this case under a deferential abuse of discretion standard, but will remain mindful of the fact that Prudential's seeming conflict of interest in being

8

the entity that both evaluates and pays claims under the Plan is a factor to be weighed in deciding whether Prudential's decision here was arbitrary and capricious.

Murray's argument that the decision to deny him benefits was arbitrary and capricious has three facets: (1) that Prudential unreasonably relied upon the opinions of three reviewing physicians who disagreed with the diagnosis of his treating physician; (2) that the physicians whose opinions Prudential relied upon were essentially "in-house" employees who, because they received compensation for their reports were not truly independent; and (3) that Prudential improperly failed to consider a decision by the Social Security Administration that Murray was completely disabled.

### A. Murray's Claim Regarding Prudential's Faulty Reliance on the Reports of Consulting Physicians.

With respect to Murray's first argument that it was arbitrary and capricious to rely upon the opinions of reviewing physicians in the face of a contrary opinion from a treating physician, we note that there is no statutory requirement that a plan administrator obtain an independent medical examination in evaluating a claim for benefits under an ERISA plan. In fact, 29 C.F.R. § 2560.503-1, in pertinent part, states:

> (h)(3)(III)... in deciding an appeal of any adverse benefits determination that is based in whole or in part on a medical judgment, ... the appropriate named fiduciary shall consult

9

with a health care professional who has appropriate training and experience.

In this case, Prudential consulted with three health care professionals: Dr. Jason L. Lewis, a licenced psychologist; Dr. James M. Slayton, M.D. with specialties in psychiatry and neurology; and Dr. David Stelnman, M.D. and a diplomate of the American Board of Psychiatry and Neurology. Prudential used three different referral services in obtaining reports from these physicians, each of whom practices in a different locality. Thus, Prudential obviously complied with the express requirement of 29 C.F.R. § 2560.503-1 quoted above. Moreover, all three consulting physicians concluded that the diagnosis of the treating psychiatrist, Dr. Pamela L. Leib, was unsupported by her own clinical notes. All three consulting physicians found that Dr. Leib relied entirely on Murray's subjective complaints and that Murray's treatment regimen was utterly inconsistent with his claimed level of impairment. Each noted that Dr. Leib saw Murray only five times over a period of seven months from April through October, 2010. In this time, Dr. Leib never conducted cognitive assessment or mental status examinations to objectively document that Murray's depressed state rendered him disabled. Each of the consulting physicians retained by Prudential had access to the entirety of Dr. Leib's clinical notes and correspondence she generated for Prudential regarding Murray before each independently

determined that Dr. Leib's assessment of Murray's capabilities was unsupported by the clinical notes that documented her sessions with him. The second reviewing physician, Dr. Slayton, even had a telephone conversation with Dr. Leib concerning her findings with respect to Murray before issuing his report.

Simply put, the Court cannot conclude that Prudential's reliance on three separate paper reviews by a licensed psychologist and two licensed psychiatrists over the assessment of a treating physician who saw the patient in question only five times over a seven month period constitutes arbitrary and capricious conduct by Prudential. The numerous cases from other jurisdictions cited in Prudential's brief inform our decision in this regard as does the case of *Dolfi v. Disability Reinsurance Management Services, Inc.*, 584 F.Supp. 2d. 709 (M.D.Pa. 2008, per Vanaskie, J.). The Court must conclude that to find that Prudential acted arbitrarily and capriciously in relying upon the conclusions of these consulting physicians would be to substitute our judgment for that of the plan administrator, something we are not free to do. See *Mitchell v. Eastman Kodak Company*, 113 F.3d 433, 439 (3d. Cir. 1997).

**B. Murray's Argument That the Physicians Prudential Relied Upon Were "In-House" Doctors.**

Murray argues that "the greatest problem with Defendant's argument is its strained and insistent attempt to characterize its review as 'independent.'" (Doc. 35 at 8). Murray opines that,

11

because the three consulting physicians retained by Prudential were paid by Prudential, their inherent self-interest influenced them to issue opinions favorable to Prudential and cites *Burroughs v. Bellsouth Communications, Inc.*, 2006 U.S. Dist. LEXIS 5 to 815, pages 5-6 (N.D.Ala. 2006) in support of that proposition. The Court must note, however, that providing special deference to the opinion of a treating physician is not something that can be done without ignoring the very real possibility that a treating physician may, in a close case, favor a finding for his patient. See *Stratton v. E.I. DuPont De. Nemours and Company*, 363 F.3d 250, 255 (3d. Cir. 2004). Thus, without some corroborating evidence of bias, there is no more reason to doubt the veracity of a consulting physician than to doubt the veracity of a treating physician.

The record reveals that each of the physicians retained by Prudential to assess Dr. Leib's assessment of Murray were solicited through three separate referral services. There is nothing in the record to substantiate Murray's speculation that the three medical experts retained by Prudential were essentially Prudential "captives". Accordingly, this Court grants no credence to the argument that the consultants Prudential employed provided less than independent opinions of Murray's mental status.

C. **Argument Regarding Prudential's Failure to Consider a Decision of the Social Security Administration.**

Murray's final argument is his insinuation (Doc. 35 at 7-8)

12

that Prudential's failure to consider an award of social security disability in his favor proves that Prudential's decision on his claim was arbitrary and capricious. This argument is not well-reasoned. The record reveals that Murray was not awarded Social Security benefits during the time when Prudential was considering his claim for benefits under the Plan. Murray's final appeal determination from Prudential under the process required by the Plan was made on December 2, 2011. (Doc. 31-2 at D 484-92). The Social Security Disability Award, a copy of which is attached to Murray's brief (Doc. 35, Ex. A) is dated October 2, 2012. Thus, Murray did not perfect his social security claim until some ten months after Prudential had made its final determination under the Plan. Clearly, Prudential cannot be logically faulted for failing to consider a document that did not exist at the time Murray's claim was finally rejected. As Prudential points out (Doc. 37 at 9-10), evidence from outside the administrative record is irrelevant in determining whether the administrator's decision was arbitrary and capricious. *Mitchell v. Eastman Kodak Company, supra* at 440. Accordingly, because the Social Security determination in question was not part of the record considered by the plan administrator, Prudential cannot be held accountable for not having reviewed it. The after-the-fact social security decision (which was based to a significant extent on physical limitations that were not part of Murray's claim with Prudential) is simply not probative

13

of any unreasonable conduct on Prudential's part.

**V.   Conclusion.**

Consistent with the reasons discussed above, we must conclude: (1) that JW's Motion for Summary Judgment must be granted due to Murray's failure to adduce any evidence to support his contention that JW exerted any modicum of control over the benefits determination at issue; and (2) that Prudential's Motion for Summary Judgment must be granted because the benefits determination it made with respect to Murray's claim was neither arbitrary nor capricious but, rather, was supported by substantial evidence of record. An Order consistent with these conclusions will be filed contemporaneously herewith.

BY THE COURT

DATED:  1-9-13

/s/ Richard P. Conaboy
JUDGE RICHARD P. CONABOY
UNITED STATES DISTRICT COURT